UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DENNIS HUGHES, | ) |
| | ) |
|        Plaintiff | ) |
| | ) |
| v. | )   No. 2:15-cv-150-JHR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|        Defendant | ) |

### MEMORANDUM DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge's failure to apply Social Security Ruling 83-20 ("SSR 83-20") to infer the plaintiff's onset date of disability requires remand. The plaintiff contends that, in violation of SSR 83-20, the administrative law judge neglected to call a medical advisor to aid in making that determination. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 15) at 3-8. Because I find that the medical evidence of the plaintiff's onset date was not ambiguous, I find no reversible error and, accordingly, affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 18, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 13.

administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2005, Finding 1, Record at 13; that, through his date last insured, he had medically determinable impairments of mild bilateral hearing loss, gastroesophageal reflux, and bilateral carpal tunnel syndrome, but had no severe impairment or combination of impairments, Findings 3-4, *id*. at 14; and that he, therefore, had not been disabled from October 31, 2000, his alleged onset date of disability, through December 31, 2005, his date last insured for SSD benefits, Finding 5, *id*. at 20.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the

individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

On March 19, 2012, the plaintiff filed applications for both SSD, or Title II, and Supplemental Security Income ("SSI"), or Title XVI, benefits. *See* Record at 11. "To be eligible to receive SSD benefits [a claimant] ha[s] to have been disabled on or before [his or] her date last insured . . .; however, eligibility for SSI benefits is not dependent on insured status." *Chute v. Apfel,* No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999). On reconsideration, the plaintiff was found disabled for purposes of SSI benefits effective March 19, 2012, the date his application was filed. *See* Record at 11.[2] He continued to be found not disabled for purposes of SSD benefits. *See id*. He appealed that determination, leading to the decision of which he complains. *See id*.

The plaintiff contends that, because he had already been found disabled for purposes of SSI, the administrative law judge should have applied SSR 83-20 to infer his onset date of disability in adjudicating his SSD appeal. *See* Statement of Errors at 3-5; SSR 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 49 ("In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the

---

[2] SSI benefits do not become payable until the month after the month in which an application is filed. *See* Record at 11; 20 C.F.R. § 416.335. Thus, any determination that the plaintiff was disabled sooner could not have resulted in greater SSI benefits. By contrast, a claimant may receive SSD benefits "for up to 12 months immediately before the month in which [his or her] application is filed[,]" 20 C.F.R. § 404.621, provided, as noted above, that he or she was disabled before his or her date last insured for those benefits.

3

individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits.").

SSR 83-20 provides, in relevant part:

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20 at 51.

The administrative law judge did not cite SSR 83-20; however, a failure to do so is harmless to the extent that the dictates of the rule are otherwise heeded. *See, e.g., Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 352 (7th Cir. 2005) ("The ALJ did not refer to SSR 83-20 specifically in his decision, but this omission by itself is not reversible error. We must determine whether the ALJ nevertheless properly applied the requisite analysis. Our review of the decision leads us to conclude that he did not."); *Field v. Shalal*[a], No. CIV. 93-289-B, 1994 WL 485781, at *3 (D.N.H. Aug. 30, 1994) ("The ALJ's failure to explicitly rely on SSR 83-20 does not by itself require remand. In this case, however, the ALJ's reasoning also fails to comport with SSR 83-20's substantive requirements.") (citation omitted).

While SSR 83-20 does not mandate that a medical advisor be called in every instance, or additional evidence be sought, courts have construed one or both of those steps to be essential when the record is ambiguous regarding onset date. *See, e.g., Katt v. Astrue,* No. 05-55043, 2007 W L 815418, at *1 (9th Cir. Mar. 14, 2007) ("[A]n ALJ must call a medical expert if there is ambiguity in the record regarding the onset date of a claimant's disability. If the medical

4

evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.") (citation and internal quotation marks omitted); *Blea v. Barnhart,* 466 F.3d 903, 910 (10th Cir. 2006) ("[A] medical advisor need be called only if the medical evidence of onset is ambiguous.") (citation and internal quotation marks omitted); *Briscoe,* 425 F.3d at 353 ("The ALJ acknowledged that the medical evidence was inconclusive. Rather than explore other sources of evidence, as SSR 83-20 requires, the ALJ drew a negative inference at that point."); *May v. Social Sec. Admin. Comm'r,* No. 97-1367, 1997 WL 616196, at *1-*2 (1st Cir. Oct. 7, 1997) (because evidence regarding date on which claimant's mental impairment became severe was ambiguous, SSR 83-20 required administrative law judge to consult medical advisor); *Grebenick v. Chater,* 121 F.3d 1193, 1200-01 (8th Cir. 1997) ("It is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [claimant] was not disabled before September 30, 1982. Rather, when there is no contemporaneous medical documentation, we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status. If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a legitimate medical basis.") (citations and internal quotation marks omitted).

The plaintiff argues that the medical evidence of his onset date was ambiguous, as a result of which the administrative law judge erred in rejecting his claim at Step 2 of the five-step sequential evaluation process for failure to demonstrate that he had a severe impairment as of his

date last insured, December 31, 2005, rather than calling a medical advisor. *See* Statement of Errors at 3-6.[3]

The administrative law judge indeed erred in failing to follow SSR 83-20 in this circumstance. However, I agree with the commissioner that the medical evidence of the plaintiff's onset date was not ambiguous, as a result of which remand for the purpose of obtaining the opinion of a medical advisor was unwarranted. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 18) at 3-7.

The administrative law judge explained, in relevant part:

> The evidence of record dated prior to December 31, 2005, consists of only emergency room records from Southern Maine Medical Center dated June 7, 1994 through November 13, 1996, and treatment records from Sacopee Valley Health Center dated November 1, 1997, through October 27, 2000. Although it has been

---

[3] At oral argument, the plaintiff's counsel went a step further, arguing that, in a disability onset case, the application of the usual five-step sequential evaluation process is antithetical to the dictates of SSR 83-20, constituting a sufficiently fundamental analytical error as to warrant remand in itself. He contended that, in any event, in cases such as this, in which an administrative law judge has neither cited SSR 83-20 nor applied its analytical rubric, the question of whether the medical evidence of onset date is ambiguous should be judged with reference to the raw evidence itself, not the supportability of the administrative law judge's handling of that evidence pursuant to an inapposite analytical framework. As counsel for the commissioner rejoined, these arguments were not raised in the plaintiff's statement of errors, *see generally* Statement of Errors, and, hence, are waived, *see, e.g., Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). In any event, even if these arguments were not waived, they are unavailing. As the commissioner points out, *see* Opposition at 2-3 n.2, a case is pending before the First Circuit, *Fischer v. Colvin*, No. 15-1041 (1st Cir.), concerning the proper interpretation of SSR 83-20 and the circumstances in which a medical advisor must be called. In *Fischer*, the commissioner appealed a decision of the United States Court for the District of New Hampshire holding, *inter alia*, that SSR 83-20 "permits the ALJ to decline consultation with a medical advisor only if no legitimate basis in the record can support an inference of disability as of the date last insured. . . . Thus, even a record that furnishes only weak support for a claim remains ambiguous, and therefore requires consultation with a medical advisor, if it could support any legitimate inference of disability prior to the date last insured." *Fischer v. Colvin*, Civil No. 13-cv-00463-PB, 2014 WL 5502922, at *6 (D.N.H. Oct. 30, 2014) (citations and internal punctuation omitted). Reasonable minds can disagree as to whether, once an administrative law judge has mistakenly neglected to apply SSR 83-20 in adjudicating a disability onset claim, a reviewing court should ignore his or her evaluation of the evidence or take it into consideration, as this court has, in determining whether there is an ambiguity necessitating the use of a medical advisor. As of the date hereof, the First Circuit has yet to issue its decision in *Fischer*. I decline to alter this court's prior precedent, *see, e.g., McGlynn v. Astrue*, No. 1:11-cv-395-DBH, 2012 WL 2913535, at *3-*7 (D. Me. June 28, 2012) (rec.dec., *aff'd* July 17, 2012), in the absence of further guidance from the First Circuit.

>alleged that many of the [plaintiff's] current impairments began prior to his date last insured, no medical records whatsoever have been submitted into evidence for the period between October 31, 2000, and November 8, 2007.
>
>The evidence of record does show that the [plaintiff] has a long history of pain and numbness in the upper extremities due to bilateral carpal tunnel syndrome. Medical records prior to the date last insured document complaints of pain and numbness in the wrist and arms secondary to bilateral carpal tunnel syndrome in November, 1997, and in May and June, 1998. While he was noted by examiners to have positive Tinel and [P]halen signs, and the start of Dupuytren contractures of both ring fingers, examinations were reported as being negative for atrophy, reflex loss, decreased strength, and limitation of motion. Although electrodiagnostic testing in 2008 and 2010[] did reveal moderate right and moderate to severe left focal median mononeuropathy across the wrists, nerve conduction studies do not appear to have been warranted or performed prior to the date last insured.
>
>Following complaints of worsening symptoms in 2007 and 2008, and electrodiagnostic testing in 2008, the [plaintiff] underwent carpal tunnel releases on the right wrist on April 1, 2008, and on the left wrist on May 12, 2008. However, the evidence fails to demonstrate that [he] required surgical intervention on his upper extremities at any time prior to December 31, 2005. He received only conservative care in the form of night splints, Ibuprofen, and finger gliding exercises in 1997 and 1998. . . . Medical records dated June 29, 1998, indicate that the [plaintiff] reported that his symptoms were moderately improved, and that treating sources planned to taper him off Ibuprofen and to wean him off his night splints over the next four to six weeks. The [plaintiff] does not appear to have sought or received treatment for carpal tunnel syndrome again until November 8, 2007, at which time he complained to Christine Munroe, D.O., of left wrist and elbow pain, and that he felt bilateral increased "sensitivity" in the hands and arms.

Record at 15-16 (citations omitted).

The administrative law judge further noted that the plaintiff had been "diagnosed with a host of medical conditions since 2007, including hyperlipidemia, vitamin D deficiency, meralgia paresthetica, arthritis, obstructive sleep apnea, headaches, chronic pain syndrome, and restless leg syndrome" and that the record contained no documentation of signs, symptoms, diagnoses of, or treatment for, any of those conditions on or before December 31, 2005. *Id*. at 16 (citations omitted).

7

She deemed the plaintiff's testimony as to his condition on and prior to his date last insured not entirely credible, *see id.* at 15, 17-18, and gave little to no weight to the testimony of his longtime roommate, Cheryl Page, who described herself on a function report as his "fiancé[e]," in that "it is from a[] non-impartial source, and the degree of limitations reported is inconsistent with the lack of medical records, objective testing, and treatment prior to December 31, 2005[,]" *id.* at 18. She added that "Ms. Page's reports of worsening hand symptoms from 2000 to 2005 [are] not substantiated in the record, and [are] inconsistent with a November 8, 2007, treatment note from Christine Munroe, D.O., which indicates that the [plaintiff] complained of left wrist and elbow pain, and that he felt bilateral increased "sensitivity" in the hands and arms." *Id.* (citation omitted). For the same reasons, and because Page was a non-medical source, she gave little to no weight to a written description by Page of the plaintiff's functional limitations insofar as it bore on his condition prior to December 31, 2005. *See id.* at 19.

She noted that the plaintiff's treating physician, David Yarian, M.D., had stated on July 22, 2011, that he did not see the plaintiff's issues getting better and that the plaintiff's chronic pain and paresthesias had kept him from gainful employment for several years, and that Dr. Yarian had provided an opinion dated August 22, 2013, that, from October 31, 2000, through the date of the opinion, the plaintiff had a number of functional restrictions, among them a need to alternate sitting and standing periodically, an ability to lift/carry less than 10 pounds frequently and 10 pounds occasionally, an ability to stand/walk for less than two hours in an eight-hour workday, and limitations in pushing and pulling with his upper and lower extremities as well as reaching and feeling. *See id.* However, she noted that she gave Dr. Yarian's opinions no weight with respect to the period from October 31, 2000, through December 31, 2005, explaining:

8

> While Dr. Yarian has been treating the [plaintiff] since 2009, he does not appear to have ever treated or examined [him] prior to the date last insured. His opinions are not supported by information contained in the treatment records from other examiners dated on or before December 31, 2005, and appear to be based in large part on the [plaintiff's] subjective allegations. Dr. Yarian's findings are also inconsistent with the State agency medical consultants' assessments that there is insufficient evidence of a severe impairment prior to the date last insured.

*Id.* (citations omitted).

She noted that, while agency nonexamining consultants had found the plaintiff's peripheral neuropathy and carpal tunnel syndrome currently severe, limiting him to less than the full range of light work, they had found insufficient evidence of a severe physical impairment, or of any medically determinable mental impairment, prior to his date last insured. *See id*. She deemed those assessments well supported and consistent with the record as a whole and gave them great weight with respect to the period at issue. *See id*. at 19-20.

The plaintiff points out that, for purposes of SSI, he was granted disability effective as of the date of his application rather than based on a finding that his impairments actually rendered him disabled as of that date. *See* Statement of Errors at 4. He asserts that, in these circumstances, SSR 83-20 requires that an administrative law judge determine the actual onset date for purposes of SSD, taking into account his "allegations, work history, if any, and the medical and other evidence concerning impairment severity." *Id*. (quoting SSR 83-20 at 50). He argues that, in the circumstances of this case, in which the onset date was ambiguous, the administrative law judge committed reversible error in failing to enlist the aid of a medical advisor to infer an onset date before determining the severity of his major depressive disorder and carpal tunnel syndrome prior to his date last insured. *See id*. at 5.

He contends that the case of *Plumley v. Astrue*, Civil Action No. 2:09-CV-42, 2010 WL 520271 (D. Vt. Feb. 9, 2010), is instructive, pointing out that, in that case, as here, the claimant had been found disabled for purposes of SSI but the administrative law judge failed to apply SSR

9

83-20 to determine her onset date for purposes of her application for Child's Disability Benefits, instead ruling that she had no severe impairment on or before she turned 22. *See id*. at 5-6; *Plumley*, 2010 WL 520271, at *1-*3.[4] The *Plumley* court vacated the decision and remanded for further proceedings on the basis that the medical evidence concerning onset date was ambiguous, as a result of which the administrative law judge was required to call on the services of a medical advisor to aid in inferring onset date. *See* Statement of Errors at 6; *see also Plumley*, 2010 WL 520271, at *14.

The plaintiff argues that, in this case, as well, the medical evidence concerning the date of his onset of disability was ambiguous, pointing to (i) Dr. Yarian's opinion that he was significantly limited as early as October 2000, (ii) treatment notes establishing that he was diagnosed with carpal tunnel syndrome prior to his date last insured, with the administrative law judge conceding that he had "a long history of pain and numbness in the upper extremities" due to that condition, and (iii) Page's lay testimony, which the administrative law judge rejected. Statement of Errors at 7-8 (quoting Record at 15).[5]

He contends that the administrative law judge's reliance on the opinions of agency nonexamining consultants was misplaced in that the consultants' failure to assess a likely onset date was predicated on a lack of contemporaneous medical records rather than SSR 83-20 factors such as the plaintiff's work history or the circumstances that may have given rise to his disability. *See id*. at 8. He notes that, in *Plumley*, the court found the administrative law judge's

---

[4] To be entitled to Child's Disability Benefits on the earnings record of a wage earner, a claimant must demonstrate, *inter alia*, that if he or she is over age 18 and not eligible for benefits as a full-time student, he or she has a disability that began before age 22. *See* 20 C.F.R. § 404.350; *see also, e.g., Starcevic v. Commissioner of Soc. Sec.,* No. 08-13128, 2009 WL 2222631, at *6 (E D. Mich. July 22, 2009) (claimant applying for Child's Disability Benefits must demonstrate that he or she was disabled before he or she turned 22 "and was continuously disabled from the date of [his or] her twenty-second birthday through the date that [he or] she applied for benefits").

[5] While the plaintiff seeks remand for the purpose of calling a medical advisor to aid in determining when the combination of his major depressive disorder and carpal tunnel syndrome became disabling, *see* Statement of Errors at 5, he points to no record evidence creating an ambiguity regarding the impact of his mental impairment on or before his date last insured, *see id*. at 3-8.

reliance on similar opinions insufficient to satisfy SSR 83-20 when "both doctors improperly based their findings on a lack of evidence, rather than attempting to infer an onset date based on the evidence contained in the record." *Id*. (quoting *Plumley*, 2010 WL 520271, at *12).[6]

While the administrative law judge erred in ignoring SSR 83-20, I agree with the commissioner that the plaintiff fails to establish that there is any ambiguity in the medical evidence of record regarding whether he was disabled as of his date last insured, rendering the error harmless. *See* Opposition at 3-7.

First, the administrative law judge supplied several reasons for rejecting the Yarian opinion to the extent that it addressed the period prior to December 31, 2005, including its inconsistency with the available evidence from that time period, and the plaintiff does not separately challenge that rejection. *See* Record at 19; Statement of Errors at 3-8. The Yarian opinion, hence, does not suffice to create an ambiguity as to date of onset of disability.

Second, this court has observed that a medical opinion that there is insufficient evidence to assess a claimant's condition prior to his or her date last insured tends to "cut against, rather than supporting, a finding of ambiguity." *Moreau v. Colvin*, No. 1:14-CV-191-JHR, 2015 WL 1723230, at *7 (D. Me. Apr. 14, 2015) (citation and internal quotation marks omitted). As the commissioner argues, *see* Opposition at 5, *Plumley* is distinguishable in that, there, one of the agency nonexamining consultants relied on several mistaken assumptions about the medical record, *see Plumley*, 2010 WL 520271, at *12. In addition, as the commissioner points out, *see* Opposition at 5 n.3, one of the agency nonexamining consultants in this case, Karyn Diamond,

---

[6] At oral argument, the plaintiff's counsel further contended that, while both agency nonexamining consultants indicated that there was insufficient evidence to evaluate his client's condition as of his date last insured, neither saw any of the evidence predating December 31, 2005, which was added to the record after the issuance of their opinions. He faulted the administrative law judge for failing to recognize this. Counsel for the commissioner generally objected that the plaintiff's counsel had challenged some of the administrative law judge's rationales for the first time at oral argument. I agree that this argument is waived. *See, e.g., Farrin,* 2006 WL 549376, at *5.

M.D., noted a "[m]edical onset date of 01/19/11 based upon earliest objective evidence provided by neurology provider of bilateral LE polyneuropathy which was based upon exam findings, the latter which have remained stable since 1/11[,]" Record at 71.

Third, the plaintiff does not point to evidence suggesting that his carpal tunnel syndrome symptoms in themselves might have been disabling prior to his date last insured, or contest the administrative law judge's findings that physical examinations in 1997 and 1998, the only evidence of record prior to his date last insured, were generally benign (*e.g.*, no atrophy, reflex loss, decreased strength, or limitation of motion) and treatment was conservative (*e.g.*, night splints, Ibuprofen, and finger gliding exercises). *See* Statement of Errors at 3-8; Record at 15, 489-92.

Fourth, while SSR 83-20 calls for consideration of lay testimony, it does not mandate that such evidence be given any particular weight. *See* SSR 83-20 at 51-52. The plaintiff does not challenge the reasons supplied by the administrative law judge for rejecting Page's testimony and written statement, including its inconsistency with the available medical evidence. *See* Statement of Errors at 3-8.[7]

The plaintiff, thus, fails to demonstrate that there is an ambiguity in the medical evidence regarding his date of onset of disability that warrants remand for further proceedings.

---

[7] At oral argument, the plaintiff's counsel did challenge the administrative law judge's reasons for rejecting the Page testimony, contending that they were illogical in the context of an SSR 83-20 analysis. However, as noted above, counsel for the commissioner generally objected that the plaintiff's counsel had challenged some of the administrative law judge's rationales for the first time at oral argument. I agree that this argument is waived. *See, e.g., Farrin,* 2006 WL 549376, at *5.

## II.  Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.


Dated this 19th day of January, 2016.

                                                                /s/  John H. Rich III
                                                                John H. Rich III
                                                                United States Magistrate Judge